## Case No. 3,832.

### The DETROIT.

[1 Brown, Adm. 141.] [1]

Circuit Court, E. D. Michigan. June, 1874.

PRACTICE—AMENDMENT OF LIBEL — STATE CLAIM —RIGHTS OF BONA FIDE PURCHASER.

1. A court of admiralty has no power to permit a libel to be amended by striking out the name of a sole libellant and substituting another in its place. Such amendment is virtually the institution of a new suit, and discharges the sureties upon the stipulation.

[Cited in The Maggie Jones, Case No. 8,947. Disapproved in The William F. M'Rae, 23 Fed. 559.]

----

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

2. It is the duty of the claimant, however, to put his objections upon the record, and unless he does so, he will be deemed to have waived them by appearing, examining witnesses, and contesting the case upon the merits.

3. A claim for towage accrued against a vessel in May and June, 1865, while she was in the hands of a person who had contracted to purchase her. Having failed to fulfil his contract; she was returned to the owner who took her to Canada within a month or two after the services were rendered, where she remained until June 27th, of the following year. She was there resold to a bona fide purchaser, without notice, who brought her within the jurisdiction of the court, and kept her during the remainder of the summer. On October 6th, the libel was filed and the vessel attached. *Held*, that the lien was waived and the action could not be maintained.

[Approved in The Hercules, Case No. 6,400. Followed in The Theodore Perry, Id. 13,879. Cited in The Bristol, 11 Fed. 164; The Rapid Transit, Id. 335; The J. W. Tucker, 20 Fed. 134.]

4. A bona fide purchaser under a bill of sale does not lose the protection of the law by taking the collateral guaranty of a third party indemnifying him against liens.

[Approved in The Hercules, Case No. 6,400.]

On appeal from the decree of the district court dismissing the libel. The action was brought to recover for the services of the tug Young America, in towing the barge Detroit to and from Bear Creek, in Canada. The libel was originally filed in the name of John K. Harrow, who was supposed to be the owner of the tug. After answer filed and the testimony of one witness had been taken, it was discovered that James P. Harrow was the owner of the tug at the time the services were performed. Upon an affidavit that the proctor had been misinformed at the time the suit was commenced, an amendment was permitted, substituting James P. for John K. Harrow as libellant. A motion to vacate the order permitting the amendment was afterwards made and denied. Claimant thereupon appeared, took testimony, cross-examined witnesses, and contested the case upon the merits, without further objection to the amendment. The towage services in question were performed in May and June, 1865, the barge being then in the hands of one McDonald, who held her under an agreement to purchase of one Kean, the owner. On July 14th, 1865, McDonald having failed to perform his contract, Kean took possession of her and had her towed to Canada, opposite Detroit, where she underwent some repairs. It appeared that about August 30th, she was towed back to Detroit, where she remained a very short time, and was then taken back to Canada and laid up for the remainder of the season. In the autumn of 1865, the bill was sent by Harrow, who lived at Algonac, forty miles from Detroit, to one Kanter, at Detroit, with instructions to collect. Some time before the return of the barge, Kanter made a demand on Kean who returned an evasive answer. On June 27th, 1866, the claimant, Alger, went to Canada with Kean, bought the barge there and brought her over to Detroit, where she

was thoroughly repaired. A negotiable note at four months was given for the purchase money. The bill of sale which was not given until August, contained a special warranty by Patrick E. Kean against all liens, and a collateral guaranty to the same effect was given by his agent, Michael B. Kean. The libel was filed and the barge attached October 6th, 1866.

H. B. Brown, for libellant.

But sixteen months elapsed from the time the claim accrued until the barge was attached; of these, eleven months were spent in Canada. If the barge had not changed owners there could be no pretense of a stale claim. The Nestor [Case No. 10,126]; Jay v. Allen [Id. 7,235]; Brown v. Jones [Id. 2,017]; The Sarah Ann [Id. 12,342]; Stillman v. The Buckeye State [Id. 13,445]; The Merrimac, 14 Wall. [81 U. S.] 653.

Where the vessel has changed hands, the questions to be considered are:

First. Whether the libellant has used due diligence. Was the claim enforced within a reasonable time, considering all the circumstances of the case? The Chusan [Case No. 2,717]; The Rebecca [Id. 11,619]; The Lillie Mills [Id. 8,352]; The Eliza Jane [Id. 4,363]; The Dubuque [Id. 4,110]; The Atalanta [Id. 597]. The facts of this case, with regard to the diligence used, are not unlike those in the case of The Bolivar [Id. 1,610]. So far as the claimant Alger is concerned, the case stands precisely as if the libel had been filed on the day she was brought over from Canada, because he purchased her there, and no change of circumstances took place from that time to the day of filing the libel. She was brought over as his property, sold to him on four months' credit, which did not expire until after the libel was filed. Deducting her absence in Canada, but five months elapsed from the time the claim accrued until the libel was filed. Reckoning the time she remained here after her return, less than four months elapsed, either of these being sufficient to take the case out of rule in Stillman v. The Buckeye State [supra], where it was held that as against bona fide purchasers, the libel must be filed within a year. The time of her absence should of course be deducted. The Sarah Ann [supra]; The General Jackson [Case No. 5,314].

Second. Whether the allowance of the claim will work an injury to innocent purchasers. I submit the question is not simply whether the vessel has passed into the hands of a bona fide purchaser without notice, but whether such purchaser will have to pay the claim out of his own pocket. The court will look at all the circumstances of the case, and if it finds the purchaser amply protected, will hold the vessel responsible. This distinction is noticed in the case of Packard v. The Louisa [Id. 10,652]. In the case of The Utility [Id. 16,806] the court indicates an opinion that if the purchaser protects himself, the

libellant will also be protected. In the case of Cole v. The Atlantic [Id. 2,976] the court enforced a claim against a bona fide purchaser, after the lapse of two years, because the libellant had used due diligence, and the purchaser was indemnified. Injury to third parties seems also to be made the test in the case of The Canton [Id. 2,388], and also in that of Stillman v. The Buckeye State [supra]. In this case two special-guaranties against these liens were taken from responsible parties, one of whom signed the stipulation to answer judgment, and it is not claimed that a decree for payment would work any actual injury to Alger. The amendment substituting one libellant for another was within the discretion of the court. Jennings v. Springs, 1 Bailey, Eq. 181. Even if it were not so, the claimant has waived the objection by appearing, taking testimony, noticing the case for trial, and litigating on the merits for eight years without objection.

F. H. Canfield, for claimant.

1. No attempt is made to contradict claimant's testimony, that he is a bona fide purchaser without notice. The fact that the bill of sale contains full covenants of warranty, does not deprive the purchaser of the protection which the law affords him. Indeed a quitclaim deed is considered strong evidence that the vendee is not a bona fide purchaser. Oliver v. Piatt, 3 How. [44 U. S.] 333; Lowry v. Brown, 1 Cold. 456. To sustain libellant's position is to subject the purchaser under covenants of warranty to the expense of two suits: 1st, to defend the claim; 2d, to recover from his warrantor.

2. Libellant's claim is stale. The services were rendered not to Alger nor to Kean, but to McDonald, who held the barge under an agreement to purchase. The general rule with regard to laches, is stated in the following case. The Dubuque [supra]. It is only a statement of a general principle of law, that, as between two parties, a loss must be borne by him who might have acted and neglected to do so. Claimant has been guilty of no laches. If he pays, he suffers a loss which libellant might have prevented by acting promptly. Had proceedings been instituted before August 16th, when the bill of sale was given, claimant might have protected himself by refusing to accept it until the claim was paid. Blaine v. The Carter, 4 Cranch [8 U. S.] 328; Stillman v. The Buckeye State [supra]; The Eliza Jane [supra]; The Paul Boggs [Case No. 10,846]; The General Jackson [supra]; The Dubuque [Case No. 4,110]; The John Lowe [Id. 7,356]; The Favorite [Id. 4,696].

SWAYNE, Circuit Justice (orally). The libel in this case was originally filed by John K. Harrow, but, by an amendment allowed under an order of the district court, the name of James P. Harrow was substituted. It was not a mere mistake in the name of

the libellant, but an actual change of one person for another. I think there was no authority to make this order. It was decided by the supreme court in The Commander in Chief, 1 Wall. [68 U. S.] 43, that new parties may be added, and parties improperly joined may, on motion, be stricken out, but I do not think this authorizes the substitution of one sole libellant for another. It is, substantially, the institution of a new suit. Clearly, this could not be done at common law, and I know of no authority for this practice in equity, except the one cited from Bailey's Reports, which rests upon different principles. If the claimant, after having objected, and asked to have the order vacated, had stood by his objection and refused to proceed further in the case, or if he had put his exceptions on record, showing that he had done everything in his power to insist upon them, I should have held it fatal in this court. But I think, by appearing, taking testimony and cross-examining witnesses, arguing the case upon the merits, and conducting the litigation for nearly eight years without observing any of the forms to which I have adverted, the objection must be deemed to have been waived. By appearing and contesting this new suit upon the merits, the claimant is now precluded from insisting it was not properly commenced. The effect of these proceedings upon the sureties, it is not necessary here to discuss. There is a controversy between the parties, whether the barge was taken to Canada on the 14th of July or on the 31st of August, but I do not regard it as material to the disposition of this case. The services having been rendered in May and June, the libellant cannot be considered in default for failing to prosecute his claim before the 31st of August, assuming her to have been removed upon that day. She remained at Windsor, opposite and in sight of Detroit, until the 27th of June, 1866, when the claimant Alger went to Canada, purchased her, and brought her to Detroit, where she was put into a dry dock and largely repaired. This libel was filed and the barge attached on the 13th of October, 1866.

The question to be considered is whether this delay is to be deemed a waiver of libellant's lien as against Alger. It is said he is not a bona fide purchaser, by reason of the warranty contained in the bill of sale and the collateral guaranty given by M. B. Kean. It seems to me, however, that the answer of Mr. Canfield is entirely conclusive upon that point. It is held in the authorities upon that subject, that the very fact that a vendee accepts a quitclaim deed, is strong evidence that he is not a bona fide purchaser, and such I conceive to be the law. I do not understand that a person, by taking the warranty of his vendor, or of a third party, loses the protection of the law applicable to bona fide purchases. The services were rendered while the vessel was in possession of McDonald, under a claim of ownership. So far as it appears from the testimony, the barge was his, and he was its agent for all purposes. After he had failed to complete his purchase, and the vessel was surrendered to Kean, he was entitled to be advised that such a claim was owing by McDonald when he might possibly protect himself against it, and it is proven in this case that a demand was made upon him for payment some time during the following autumn. Had libellant failed to give this notice before the close of navigation. I should have held the barge discharged of the lien while in Kean's hands. But it seems to me this was not libellant's only duty in the premises. The season of navigation closed and winter passed. On the 27th of June, 1866, the claimant Alger went to Windsor, where the barge was lying, purchased her, brought her to Detroit, and placed her in Jones' shipyard, where extensive repairs were commenced. Libellant was bound to know all this. He certainly could have learned it by observation or inquiry. Yet he allowed the months of July, August and September to elapse without taking a step to enforce his claim. Not until the 6th of October, was his libel filed and the vessel attached. During all this time the title was vested in Alger. Now, as a question of law, was this reasonable diligence? The main authorities upon the subject have been read and I fully concur in their reasoning.

In the cases of Stillman v. The Buckeye State [supra], and The Dubuque [supra], a rule applicable to the lakes is laid down, that where the vessel has passed into the hands of a bona fide purchaser, claims of this character should be prosecuted within the current season of navigation, or, at least, within a year. I think this rule is founded upon the most solid considerations of good sense. Granting there were no laches in this case before the close of navigation, as the vessel was all this time beyond the jurisdiction of the court, I think it was incumbent upon libellant to keep a careful watch upon her movements, to notify the purchaser of his claim as soon as she was sold, and to proceed to enforce his lien as soon as she was brought within the jurisdiction of the court. He was bound to know that this vessel was as likely to change hands as any other, and should have used diligence to ascertain when she was transferred to Alger, and have given him speedy notice of his claim in order that he might lose no opportunity of protecting himself against it. Instead of this, he allows the three busiest months of the season to elapse without making known its existence. I think these facts warrant the presumption that the lien was waived.

Upon the best consideration I have been able to give to the case, I feel constrained to affirm the decree of the district court. Libel dismissed.